## Linard's Administrator v. Interstate Coal Company.

(Decided October 30, 1914.)

### Appeal from Knox Circuit Court.

1. Assumption of Risk—Action for Damages for Death—Error in Instructions—When Prejudicial.—In an action to recover damages for the death of the plaintiff's intestate employed by the defendant as the keeper of a trap-door used in its mine to prevent the escape of fresh air from the mine, such death having been caused, as alleged, and as there was some evidence to show, by the negligence of the defendant's motorman in failing to give the intestate the customary signal of the coming of an electric motor and cars and running the motor against the trap-door and over the intestate, it was prejudicial error for the trial court to instruct the jury that the intestate "assumed all the risks and hazard of his employment." The law is not as stated in the instruction, for the decedent did not assume all the risks of his employment, but only such as were ordinarily incidental to the employment; and the general rule is, that whether the servant assumes the risk or not is a question for the jury where men of ordinary judgment, on the facts, might reasonably differ in opinion.

R. S. ROSE and S. T. STEELE for appellant.

BLACK, BLACK & OWENS for appellee.

Opinion of the Court by Judge Settle—Reversing.

Harry Linard, a youth seventeen years of age, was killed in the coal mine of the appellee, Interstate Coal Company, by an electric motor used for hauling coal

cars in the mine, which ran over his body at or near a trap-door of which the decedent was in charge. The electric motor, which weighed six tons, had attached to it several coal cars and was at the time being operated by a motorman or engineer in appellee's employ.

This action was brought in the court below by the appellant, as administrator of his estate, seeking to recover of the appellee damages for his death, it being alleged in the petition that his death was caused by the negligence of appellee's motorman in charge of the motor by which he was killed. The answer of appellee denied the negligence charged in the petition, and alleged contributory negligence on the part of the decedent, but for which he would not have been killed. The trial in the court below resulted in a verdict for the appellee and from the judgment entered upon the verdict the administrator has appealed.

It appears from the evidence that the appellee, in compliance with a duty imposed upon it by statute to keep a sufficient quantity of pure air circulating through the entries of its mine where its employes were compelled to work in mining coal, had erected at various places upon and along its haul-ways air-tight trap-doors to prevent the escape of fresh air forced into the mine through air courses, before it had made a circuit of the places where the men were at work. At each of these trap-doors is stationed an employe of appellee whose duty it is to see that the trap-door of which he is in charge is kept closed, and to open it when required, for the passage of the electric motor and empty or loaded cars hauled by it. The employes stationed at the trap-doors for the purposes indicated are called "trappers." The decedent, Harry Linard, was at the time of his death a trapper at one of these doors and had been so employed for a sufficient length of time to enable him to become reasonably familiar with the duties of a trapper. When struck and killed by the motor he was on the car track at the trap-door, where he had apparently placed himself for the purpose of opening the trap-door.

It is the contention of appellant, and his evidence conduced to prove, that the death of the decedent was caused by the negligence of the motorman in approaching the trap-door with his motor and attached cars at a dangerous speed and without giving the trapper the usual or customary signals of the approach of the motor;

that the trap-door was between the decedent and the approaching motor and cars, and that while he was standing at the trap-door, where he was required to be to open it, the motorman, without notifying him of the presence of the motor or stopping it to give him an opportunity to open the door, ran the motor against it with such force as to burst it open, and against the decedent, knock him down and cause the motor to run over him. On the other hand, appellee's evidence conduced to prove that the motor and cars were moving slowly and at a safe rate of speed toward the trap-door when the decedent was killed; that the gong on the motor sounded at the proper place and time the customary signal of the motor's approach; and that the death of the decedent was caused by his own negligence in failing to maintain a lookout for the motor, in failing to open the trap-door for its passage, and on account of his getting on the track to open the trap-door at a time when the motor was too close to it for him to do so, or for the motor to be stopped by the motorman before it struck him.

The evidence in appellee's behalf further conduced to prove that it was a custom in the mine and also a rule of appellee that the trapper, upon hearing the signal given by the gong of the coming of the motor and cars, which signal was usually sounded when the motor was a hundred feet from the trap-door, to at once open the door for the passing of the motor and cars; and that of the motorman, after giving the signal of approach, to proceed with the expectation that the door would be opened by the trapper in time for the motor and cars to pass through it without stopping, unless the trapper signalled him to the contrary with his lantern, in which latter event, the motorman brought his motor and cars to a standstill to await the opening of the door or the further orders of the trapper; that this custom and rule were well known to the decedent and had been observed and obeyed by him at all times previous to the accident resulting in his death, but that on that occasion, it was not obeyed by him, because he fell asleep at his post of duty and upon awaking, instead of signalling the motorman to stop his motor and cars until he could open the trap-door, the decedent suddenly stepped on the track for the purpose of opening it, but without having time to do so before the motor struck him; that in the meantime, the motorman, after giving the approach signal one

hundred feet away, assuming that the decedent would, in obedience to the rule mentioned, open the door in ample time for the passing of the motor and cars or would signal him to stop if he could not do so, continued to move the motor and cars toward the trap-door until it got too close to be stopped before striking him; and, in fact, did not discover that the decedent was in a place of danger until the motor struck the trap-door and knocked him to the ground. There was no evidence that the motor and cars were running too fast or at an unsafe rate of speed.

With respect to the rule appellee claims the decedent violated, it should here be remarked that several witnesses introduced in behalf of appellant testified that if appellee ever had such a rule its existence was unknown to them, and no witness testified positively that it was known to the decedent. So there was, as to the rule as well as every other material issue of fact in the case, a contrariety of evidence. There was no eye-witness to the killing of the decedent. Parker, the motorman, did not even claim to see him or to know where he was until his presence was discovered by the bursting open of the trap-door when the motor struck it and caused him to be knocked down and run over by the motor. One witness for appellee testified that he saw the decedent between fifteen and thirty minutes before he was killed and that he was then near the trap-door and appeared to be asleep; but there was no evidence that he was asleep at the time of the approach of the motor and cars or that he was not awake during the interval of fifteen minutes between the time of his death and when he was seen by the witness who found him asleep. There is no presumption of negligence against the decedent any more than there is a presumption of negligence against the motorman. The negligence of either had to be established by the evidence or by circumstances from which such negligence could properly be inferred. It is patent, therefore, from what has been said as to the conflicting character of the evidence, that the question whether either the motorman or decedent was guilty of negligence, and whether the death of the latter was caused by the negligence of the former or his own negligence, was properly left to the decision of the jury.

Of the several errors assigned by the appellant in this case, only one can be regarded as sufficiently prejudicial to require the reversal of the judgment appealed

from, and this error exists in instruction No. 3, given by the trial court. The instruction is as follows:

"Harry Linard, as trapper, assumed all the risk and hazard of his employment, and it was his duty to use ordinary care in the discharge of his duties as trapper; and if, upon the occasion of his death, he contributed to his injury and death by failing in any way to use ordinary care in the discharge of his duties or for his own safety by failing to give the signal to the motorman or opening the door for the motorman as required of him, or by being asleep and carelessly getting in the way of the motor, then the law is for the defendant and you should so find."

The law is not as stated in the instruction. The decedent did not assume all the risks of his employment, but only such as were ordinarily incidental to the employment, and the general rule is, that whether the servant assumes the risk or not is a question for the jury, where men of ordinary judgment on the facts might reasonably differ in opinion. L. & N. R. Co. v. McMillen, 119 S. W., 221; Mead v. Ashland Steel Company, 30 R., 1164. When the case is again tried the court in lieu of instruction 3 should instruct the jury as follows:

You are further instructed that when plaintiff's decedent entered the service of the defendant he assumed all the ordinary risks incident to his employment as trapper; and if you shall believe from the evidence that his death was caused by the ordinary risks of the employment, which he had assumed, and not by reason of the negligence of the defendant as set out in instruction No. 1, then the law is for the defendant and you should so find.

The form of instruction as above directed to be given, will be found in section 348, Hobson, B. & C.'s "Instructions to Juries," and was approved in I. C. Ry. Co. v. Coleman, 22 R., 878; Chicago Veneer Co. v. Jones, 143 Ky., 21, and the several cases therein cited.

In addition to this instruction the following should be given: If you believe from the evidence that in the matter of losing his life the decedent was himself guilty of negligence, which so contributed to his death that, but for his own negligence, he would not have been killed, then the law is for the defendant and the jury should so find.

As the case must again be tried certain verbal inaccuracies which appear in instructions Nos. 1 and 2

should be corrected so as to make those instructions read as follows:

Instruction 1.    If you believe from the evidence that the decedent, Harry Linard, on the occasion of his death, while acting in the discharge of his duties as trapper in the defendant's mine and using ordinary care for his own safety, was killed by the negligence, if any, of the defendant's servant, Blaine Parker, in running or driving one of its motor cars through the trap-door of which the decedent was trapper, if he did so run or drive it, without giving the decedent the customary signal of the coming of the motor, if there was a failure to give such signal, or by failing, if he did so fail, to obey a rule of the defendant, if there was such rule, which permitted him, in approaching the trap-door, to rely upon the decedent's opening it for the motor, unless signalled by the decedent to stop it before reaching the trap-door, then the law is for the plaintiff and you should so find. But unless you believe as· predicated in this instruction you should find for the defendant.

Instruction 2.    If you believe from the evidence that the motorman, Parker, or his helper on the motor, did, on the occasion of the decedent's death, in operating the motor and cars, give to the decedent the customary signal of their approach, and shall further believe from the evidence that there was a rule of the defendant which permitted the motorman, after giving such signal, to run the motor and cars through the trap-door without previously stopping, unless the trapper signalled to the motorman to stop; that such rule was known, or by the use of ordinary care could have been known to the decedent, and that following the giving, if any, of such customary signal of the approach of the motor and cars, the decedent failed to signal the motorman to stop the motor and cars, and by reason of such failure, if any, the motorman was caused to run the motor against the trap-door and upon the decedent, when he would not otherwise have done so, you should in that event find for the defendant.

Instructions 4, 5 and 6, used on the former trial, seem to be free of error and they may again be gven on the retrial of the case.    For the reasons indicated the judgment is reversed and cause remanded for a new trial consistent with the opinion.